UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITY BEDDINGFIELD, | Case No.  23-cv-05896-EMC |
| Plaintiff, | |
| v. | **ORDER DENYING/GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| UNITED PARCEL SERVICE, INC., et al., | |
| Defendants. | Docket No. 9 |

## I.     INTRODUCTION

Plaintiff Unity Beddingfield, an African American woman, filed this action against her employer Defendant United Parcel Service, Inc. ("UPS") alleging she was discriminated against on the basis of race, gender and pregnancy.  Docket No. 1–2 ("Complaint") ¶¶ 1–4.  Plaintiff alleges that she was subjected to consistent and frequent discrimination and harassment by UPS severe enough to cause her anxiety, debilitation and illness.  *Id.* ¶¶ 5–8.  Plaintiff asserts seven claims under the Fair Employment and Housing Act, Equal Pay Act, and Pregnant Workers Fairness Act, as well as intentional infliction of emotional distress, retaliatory disparate treatment in violation of public policy, and unfair business practices.  *Id.* ¶¶ 119–215.

Now pending before the Court is Defendant's motion to dismiss the case for Plaintiff's failure to exhaust her administrative remedies and failure to plead sufficient facts.  Docket No. 9 ("Motion").  For the following reasons, the Court **GRANTS in part and DENIES in part** Defendant's motion.

## II.     FACTS AND BACKGROUND

A.     Procedural Background

Plaintiff initially joined the class action lawsuit *Goins v. United Parcel Service, Inc.*, No.

21-CV-08722-PJH, 2023 WL 3047388 at *1 (N.D. Cal. Apr. 20, 2023) as a class representative along with numerous other class representatives.  There, the court dismissed Plaintiff (and others) for failure to exhaust her administrative remedies.  *Id.* at *15.  Prior to *Goins,* Plaintiff filed her first administrative charge with the California Civil Rights Division ("CRD") on June 14, 2022 ("First CRD Charge").  Docket No. 1–2 (Complaint Exhibit A) at 30–32.  Plaintiff has not attached her right-to-sue notice for her First CRD Charge to the Complaint, but alleges that the CRD granted her the right-to-sue.[1]  Complaint ¶ 27.  However, in dismissing Plaintiff from *Goins,* the court never considered her individual administrative charge.  *Goins*, 2023 WL 3047388 at *11.  Instead the court ruled on the adequacy of a class-based charge.

Following her dismissal from the *Goins* action, Plaintiff filed her second administrative complaint to the CRD on September 1, 2023 ("Second CRD Charge").  Docket No. 1–2 (Complaint Exhibit A) at 36–39.  She received a CRD notice of case closure and right-to-sue notice on the same day.  *Id.* at 35.  She did not receive a formal federal right-to-sue notice.  *Id.*  A week later, on September 5, 2023, Plaintiff filed the instant suit against Defendants UPS, Aimee/Amy Vice, Jeffrey Davies, "Omar," Ryan Perrault, and Rene Reyes in the Superior Court of Contra Costa, California.  Complaint.  On November 15, 2023, Defendants removed the case to the Northern District of California.  Docket No. 1 ("Notice of Removal").

B.    Factual Background

Plaintiff Unity Beddingfield is an African American woman who began her permanent position as an "On-Road Supervisor" at UPS in February 2020.  Complaint ¶¶ 1, 37.  Plaintiff alleges that throughout the duration of her employment, she "experienced workplace harassment, discrimination, assault, a pattern of abuse that included insensitive remarks, comments making light of racial stereotypes, ridicule, and inappropriate shouting in the workplace."  *Id.* ¶¶ 38, 127. In one instance at an unspecified time, Plaintiff's coworker locked her in a truck and attempted to hit her with his vehicle.  *Id.* ¶¶ 57–61.  In 2021, Plaintiff also reports that she faced difficulties gaining promotions due to her race and received fewer vacations days than her colleagues.  *Id.* ¶¶

---

[1] Plaintiff's brief calls the CRD the DFEH (Department of Fair Employment and Housing) which is its former name.

United States District Court
Northern District of California

1    42–44, 78–85.

2    From the period of December 2021 through August 2023, Plaintiff alleges she was denied

3    reasonable accommodations when she gave notice to UPS regarding her pregnancy. *Id.* ¶ 108.

4    Plaintiff asserts that UPS denied her request to be taken off "Sort/Packages," where there was a

5    high possibility of heavy falling packages. *Id.* ¶ 110.  During her second trimester she requested

6    that she be transferred to a location closer to her home. *Id.* ¶ 113.  Instead, Plaintiff was

7    transferred to a farther location (farther than 75 miles in violation of UPS policy) and in fact

8    transferred a total of 7 times during her pregnancy. *Id.*  At each of these locations, Plaintiff asserts

9    that she was called the N-word and given racially derogatory names such as "Scooby Doo" and

10   "Scrappy Doo." *Id.* ¶ 114.  Additionally, Plaintiff alleges that during her pregnancy, she was

11   forced to work on a metal folding chair in the upstairs office which had no handrails or beams to

12   prevent falling packages. *Id.* ¶¶ 92–94; Docket No. 1–2 (Complaint Exhibit A) at 36–39.  Plaintiff

13   reports that she experienced physical discomfort due to these working conditions and was pushed

14   by management to go on disability leave despite her concerns.  Complaint ¶¶ 95–100.  According

15   to Plaintiff, UPS also denied her accommodation for breast pumping despite her doctor saying that

16   she needed one for her child. *Id.* ¶ 115.  Plaintiff alleges her manager was angry that she was

17   unable to return home, pump, and return to work within her allotted 30-minute break. *Id.*  Plaintiff

18   believes she was assigned to part-time supervisors and to work on part-time duties due to her

19   requests for accommodations. *Id.* ¶¶ 37, 41, 91, 112.

20   When Plaintiff attempted to report some of these issues, management assigned her to work

21   alone with the coworker who tried to hit her with his vehicle (*id.* ¶¶ 65–66), discussed her pay in

22   front of new employees (*id.* ¶¶ 97–100) and leaked her confidential reports to the subjects of

23   investigation, subjecting her to further harassment (*id.* ¶ 116).  She alleges that the cumulative

24   effect of Defendants' conduct caused her "illness…great angst, debilitation and anxiety." *Id.* ¶ 8.

25   Plaintiff advances seven causes of action against Defendant United Parcel Service, Inc., as

26   well as its employees and agents including Managers Aimee/Amy Vice, Jeffrey Davies, "Omar,"

27   Ryan Perrault, Rene Reyes, and Does from 1 through 20: (1) retaliatory disparate treatment in

28   violation of public policy; (2) harassment, Cal. Gov. Code § 12940(j) (FEHA); (3) discrimination,

United States District Court
Northern District of California

1  Cal. Gov. Code § 12900, et seq. (FEHA); (4) Intentional Infliction of Emotional Distress; (5)

2  unfair business practices; (6) violation of the Equal Pay Act; and (7) violation of the Pregnant

3  Workers Fairness Act.  *Id*. ¶¶ 119–215.

### III.      LEGAL STANDARD

5           Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

6  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

7  complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R.

8  Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's

9  decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550

10  U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the

11  claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th

12  Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the

13  pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &*

14  *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not

15  simply recite the elements of a cause of action [and] must contain sufficient allegations of

16  underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

17  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

18  990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual

19  content that allows the court to draw the reasonable inference that the Defendant is liable for the

20  misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a

21  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

22  unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

### IV.      DISCUSSION

24  A.    Count One: Retaliatory Disparate Treatment in Violation of Public Policy Claim

25           Defendant argues that the Plaintiff's first claim "Retaliatory Disparate Treatment in

26  Violation of Public Policy" against UPS is not a common law cause of action.  Complaint ¶¶ 119–

27  123; Motion at 2, n. 2.  However, California courts have recognized "a common law tort action for

28  wrongful discharge in cases in which the termination contravenes public policy."  *Tameny v.*

United States District Court
Northern District of California

1    *Atlantic Richfield Co.,* 27 Cal.3d 167, 172 (1980).  "[F]or a policy to support a wrongful discharge

2    claim, it must be: (1) delineated in either constitutional or statutory provisions; (2) public in the

3    sense that it inures to the benefit of the public rather than serving merely the interests of the

4    individual; (3) well established at the time of the discharge; and (4) substantial and fundamental."

5    *Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 894 (1997) (internal quotations omitted).

6         Here, Plaintiff alleges wrongful termination (Complaint ¶ 117) and that UPS discriminated

7    against her on the basis of race and sex (*id*. ¶ 122).  Plaintiff satisfies the first prong of the

8    *Stevenson* test.  Although she fails to expressly cite specific underlying statutory provision or

9    incorporate them by reference in her *Tameny* claim, she makes a claim of sex and race

10   discrimination under the California Fair Employment and Housing Act ("FEHA") later in her

11   complaint.  *Id*. ¶¶ 122, 146–67; *see* Gov. Code § 12900, et seq (FEHA); *see Turner v. Anheuser-*

12   *Busch, In.*, 7 Cal. 4th 1238, 1256–59 (1994) (looking through the entirety of plaintiff's complaint

13   and claims for supporting statutory provisions, although finding none sufficient); *see also Bruin v.*

14   *Mills Coll.*, No. C 06-05209 WHA, 2007 WL 419783, at *4–6 (N.D. Cal. Feb. 6, 2007) (rejecting

15   defendant's arguments on demurrer that plaintiff had not expressly identified statutes supporting

16   her *Tameny* claims because she had incorporated by reference statutes from other claims).  As to

17   the other prongs of the test, the *Stevenson* court has held that race and sex discrimination under

18   FEHA is "public," "well established," and "substantial and fundamental."  16 Cal. 4th at 894–98.

19        Thus, Plaintiff has satisfied all prongs of the *Stevenson* test and the Court denies dismissal

20   of Plaintiff's wrongful discharge in violation of public policy claim.

21   B.   <u>Counts Two and Three: Harassment and Discrimination in Violation of the California Fair</u>

22        <u>Employment and Housing Act</u>

23        Plaintiff's second and third causes of action assert claims under the FEHA.  The second

24   cause of action is harassment based on race, disability (pregnancy) and gender in violation of Cal.

25   Gov. Code § 12940(j) & (k) (FEHA).  The third cause of action is discrimination on the basis of

26   "race, sex, gender amongst several others" in violation of Gov. Code § 12900, et seq (FEHA)

27   against Defendant UPS.  Complaint ¶¶ 124–167.  There is a high degree overlap between the two

28   claims, but Plaintiff's harassment claim also includes allegations that her coworker locked her in a

1    truck and attempted to hit her with his vehicle. *Id.* ¶¶ 57–61, 134. She was also followed by cars,

2    blocked by police officers, and chased by dogs while working in Oakland. *Id.* ¶ 133. Plaintiff's

3    harassment claim is levied against all Defendants while her discrimination claim is only against

4    UPS. *Id.* ¶¶ 124–67.

5           Defendant contends that the Plaintiff's FEHA claims fail because 1) they are precluded by

6    the *Goins* decision, 2) Plaintiff failed to exhaust her administrative remedies and 3) her claims are

7    time barred. Motion at 10–11. Although it is not always clear whether Defendant is referring to

8    Plaintiff's First CRD Charge or her Second CRD Charge, Defendant acknowledges the existence

9    of each administrative charge at different points. *Id.* at 10; *id.* at 10, n. 5. For the sake of clarity,

10   Defendant's theories are analyzed with respect to both of Plaintiff's administrative charges.

11          1.    Collateral estoppel

12          Defendant argues that Plaintiff's Claims Two and Three are precluded by the *Goins'*

13   dismissal Plaintiff and 14 other class representatives from the class action for failure to exhaust

14   their administrative remedies. *Id.* at 10; *Goins*, 2023 WL 3047388 at *15. Defendant raises the

15   issue of collateral estoppel (and not res judicata) and contends "this is not the first time this Court

16   has considered this issue [of administrative exhaustion]." Motion at 10.

17          "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its

18   judgment, that decision may preclude relitigation of the issue in a suit on a different cause of

19   action involving a party to the first case." *Dodd v. Hood River County*, 59 F.3d 852, 863 (9th

20   Cir.1995). "[C]ollateral estoppel applies only where it is established that (1) *the issue necessarily*

21   *decided at the previous proceeding is identical to the one which is sought to be relitigated*; (2) the

22   first proceeding ended with a final judgment on the merits; and (3) the party against whom

23   collateral estoppel is asserted was a party or in privity with a party at the first proceeding."

24   *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (emphasis added). Collateral

25   estoppel does not bar issues that were not previously adjudicated.

26           The *Goins* court never considered Beddingfield's individual CRD charges and did not

27   purport to adjudicate the sufficiency of that administrative charge, evidently because that CRD

28   charge was not attached to the complaint. The court held that Beddingfield was one of "the fifteen

United States District Court
Northern District of California

named plaintiffs for whom no administrative charges were provided." *Goins*, 2023 WL 3047388 at *11. The *Goins* court explained that Beddingfield and the other dismissed class representatives could not rely on the individual administrative charges filed by three other class representatives. *Id.* The court also considered and rejected an aggregate administrative charge ("*Goins* aggregate CRD Charge") as the basis for exhaustion because that charge lacked factual specificity.[2] *Id.* at *6–7; Request for Judicial Notice ("RJN") at 84–87. The allegations of "company-wide and nation-wide discrimination" in the *Goins* aggregate CRD Charge were too general. *Goins*, 2023 WL 3047388 at *6–7. But the *Goins* court did not address the merits of the adequacy of Beddingfield's individual administrative charges with the CRD, and thus there is no basis to conclude *Goins* bars the instant case under collateral estoppel principles.

In any event, Plaintiff filed her Second CRD Charge on September 1, 2023, four months after her dismissal from the *Goins* class action on April 20, 2023. Docket No. 1–2 (Complaint Exhibit A) at 36–39; *Goins*, 2023 WL 3047388 at *15. Of course, the adequacy of that charge was never adjudicated in *Goins*. There is no basis for preclusion of the claims asserted in the Second CRD Charge.

---

[2] The relevant portion of the *Goins* aggregate CRD Charge is as follows:

> Galena Goins and similarly situated Women employees at United Parcel Service, Inc. were discriminated and harassed in the workplace because of their gender, age, and disability status. Complainant makes these allegations and asserts these claims on behalf of herself and other similarly situated. On information and belief, UPS is engaging in class-wide pattern and/or practice of discrimination and harassment by failing to take prompt and effective action to remedy the pervasive gender discrimination and harassment in the workplace, by failing to prevent this pattern of conduct from occurring and continuing, despite repeated complaints to Human Resources and upper management, by failing to follow The UPS Code of Business Conduct, failure to accurately record Women Employees' time worked, and failure to offer Women Employee accommodations for their disability, and/or implement appropriate anti-discrimination & harassment policies, by failing to discipline those accused of discrimination and/or harassment, and by failing to uphold its Professional Conduct and Anti-Harassment Policy with respect to treatment of Women, implement an adequate complaint mechanism for receiving and addressing complaints of discrimination and/or harassment. The discrimination and harassment and Respondents` failure to prevent and correct it altered the terms and conditions of Complainant and similarly situated Women employees` working environment, making it a hostile and abusive environment. (Cal. Gov. Code, § 12961).

Request for Judicial Notice at 84–87.

2.      Exhaustion of Administrative Remedies

Apart from *Goins*, Defendant argues that Plaintiff failed to exhaust her administrative remedies, a predicate to the case at bar.  To bring a civil action alleging violations of the FEHA, a plaintiff must first exhaust administrative remedies by filing a timely complaint with the appropriate government agency, which here is the California Civil Rights Department ("CRD"), and receiving a right-to-sue letter.  Cal. Gov't Code § 12965(b) (FEHA).  "The administrative charge requirement serves the purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision."  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (internal citations and quotations omitted).

To satisfy administrative exhaustion, an employee bringing a FEHA claim is required to 1) submit an administrative charge to the CRD within three years of the alleged discriminatory act, 2) obtain a right-to-sue notice from the CRD, and 3) file any civil claim alleging violations of FEHA within one year of receiving the right-to-sue notice.  Cal. Gov. Code §12960 (FEHA); Cal. Gov. Code §12965 (FEHA); *Asencio v. Miller Brewing Co.*, 152 F. App'x 576, 577 (9th Cir. 2005), *disapproved of on other grounds in later appeal*, 283 F. App'x 559 (9th Cir. 2008) ("A prerequisite to filing a civil complaint under FEHA is obtaining a right-to-sue letter from the [CRD].").  As discussed, below, the Second CRD Charge and this suit were timely.

As to scope of the complaint, the plaintiff's lawsuit must be within the scope of the administrative charge; it must be "like or reasonably related to the allegations" in an administrative complaint submitted to the CRD, such that the alleged wrongful conduct would fall within "the scope of an [agency] investigation which can reasonably be expected to grow out of the charge of discrimination."  *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (internal citations and quotations omitted); *see also Vasquez v. Cnty. Of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (holding that a court may consider "all claims of discrimination that fall within the scope of the [CRD]'s actual investigation or an [CRD] investigation that could reasonably be expected to grow out of the charge").  Courts consider the following factors to determine whether plaintiff's charge is reasonably related to her allegations:

1    "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge,

2    perpetrators of discrimination named in the charge, and any locations at which discrimination is

3    alleged to have occurred." *B.K.B.*, 276 F.3d at 1100.  Administrative charges are to be construed

4    with the "utmost liberality since they are made by those unschooled in the technicalities of formal

5    pleading." *Id*.

6              a.    Scope and Adequacy of the Second CRD Charge

7         In arguing that the Plaintiff failed to exhaust her administrative remedies, Defendant

8    argues that her Second CRD Charge is "devoid of facts" and too general to be reasonably related

9    to her allegations.  Motion at 10–11 (citing *Goins*, 2023 WL 3047388); Motion at 10, n. 5.

10   Further, Defendant argues that her Second CRD Charge is "substantively identical" to the *Goins*

11   aggregate CRD Charge which the *Goins* court dismissed for failure to exhaust administrative

12   remedies.  Motion at 11; *see Goins*, 2023 WL 3047388 at *7; *see B.K.B.*, 276 F.3d at 1100.  In

13   *Goins,* the court reasoned that the aggregate CRD Charge "allege[d] company-wide and nation-

14   wide discrimination occurring on or about a single date, January 22, 2023, without naming any

15   perpetrators of the discrimination, and without listing any locations at which the alleged

16   discrimination took place." *Goins*, 2023 WL 3047388 at *7.

17        However, unlike the *Goins* aggregate CRD Charge, here, Plaintiff's Second CRD Charge

18   pleads sufficient facts alleging the "basis of discrimination, dates of discriminatory acts specified,

19   perpetrators of discrimination named in the charge, and locations where the discrimination took

20   place." *See B.K.B.*, 276 F.3d at 1100.  Plaintiff lists the following specific locations:

21            In 2022, Unity was bounced around from **Merced -> Walnut Creek
             -> Ceres -> San Ramon.  At each of these locations,** she was
22            discriminated against verbally.  She was called the N-word and
             given degrading nicknames based off Scooby Doo and Scrappy
23            Doo.

24   Docket No. 1–2 (Complaint Exhibit A) at 38 (emphasis added).  Plaintiff also alleges specific

25   discriminatory language from her manager:

26            Her manager also asked if the baby was black (Manager claimed it
             was for "identification purposes" and "making sure it was her
27            child").

28   *Id*.  And in contrast with the general allegations of discrimination "occurring on or about a single

United States District Court
Northern District of California

9

1   date" in the *Goins* aggregate CRD Charge, here, Plaintiff gives specific "dates of discriminatory

2   acts" from "Dec. 2021 - August 2023."  *See* Docket No. 1–2 (Complaint Exhibit A) at 36–39; *see*

3   *B.K.B.*, 276 F.3d at 1100.  Plaintiff states that "[d]uring her second Trimester" she was denied an

4   accommodation to be transferred closer to home, and was instead transferred farther in violation of

5   UPS policy "around 5 times in 2022 and two times in 2023."  Docket No. 1–2 (Complaint Exhibit

6   A) at 36–39.  "From Late 2022 - Present," Plaintiff reports that she was refused accommodations

7   for breastfeeding.  *Id.*

8         As to the scope of the Second CRD Charge, these same facts described in that Charge are

9   repeated verbatim in the Complaint and expanded on with more detail, such as the names of the

10  perpetrators (Complaint ¶¶ 39, 97) and discrepancies in promotion due to her race (*id.* ¶¶ 42, 104).

11  Plaintiff's additional allegations in the complaint which cover the same events alleged in the CRD

12  charge but with some added details fall within "the scope of an [agency] investigation which can

13  reasonably be expected to grow out of the charge of [race, gender, and pregnancy] discrimination."

14  *See Sosa v. Hiraoka*, 920 F.2d at 1456 (internal quotations and citations omitted); *compare with*

15  *Streeper v. Bernhardt*, No. 19-CV-00394-DKW-RT, 2020 WL 2841883, at *5 (D. Haw. June 1,

16  2020) (finding that plaintiff's charge of disability discrimination was not reasonably related to her

17  allegations of retaliation).

18        Accordingly, the Complaint herein was reasonably within the scope of Plaintiff's Second

19  CRD Charge, and that Charge was reasonably specific.  Plaintiff thus properly exhausted her

20  administrative remedy.

21                b.    <u>Notice of UPS as Respondent</u>

22        Defendant also argues that Plaintiff's Second CRD Charge fails to name "United Parcel

23  Service, Inc." as a respondent, instead naming fictious business "Uni", and therefore it was not

24  adequately noticed and thus does not fulfill the exhaustion requirement.  Motion at 13, n. 5; Reply

25  at 5; Docket No. 1–2 (Complaint Exhibit A) at 36–39.  However, Defendant can be sued

26  notwithstanding Plaintiff's error in naming it in her Second CRD Charge.  Defendant UPS had

27  adequate notice of the Charge.

28        *Sosa v. Hiraoka*, 920 F.2d 1451, 1458–59 (9th Cir. 1990) is instructive.  In *Sosa*, the Ninth

Circuit held that the plaintiff was permitted to sue thirteen individual district administrators who were not named in the original administrative charge, which named the college school district as the sole respondent. *Id*. The Ninth Circuit held that the district court erred in dismissing the plaintiff's claims against the individually named district administrators for failure to "affirmatively plead" that each individual defendant had "requisite notice or opportunity." *Id*. While the court acknowledged that generally "claimants may sue only those named in the [] charge because only they had an opportunity to respond to charges during the administrative proceeding," it outlined three "well-established exceptions" to the general rule which were applicable to the plaintiff's case:

> First, if the respondent named in the [] charge is a principal or agent of the unnamed party, or if they are "substantially identical parties," suit may proceed against the unnamed party. Second, suit may proceed if the [agency] could have inferred that the unnamed party violated [the FEHA]. Third, if the unnamed party had notice of the [agency] conciliation efforts and participated in the [agency] proceedings, then suit may proceed against the unnamed party.

*Id*. (internal citations and quotations omitted). The court elaborated that "charges can be brought against persons not named in an [agency] complaint as long as they were involved in the acts giving rise to the [agency] claims." *Id*. (internal quotations and citations omitted). "Further, where the [agency] or defendants themselves 'should have anticipated' that the claimant would name those defendants in a [] suit, the court has jurisdiction over those defendants even though they were not named in the [administrative] charge." *Id*. (citing *Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 792 (9th Cir. 1982)).

The instant case satisfies the first exception. Plaintiff's Second CRD Charge correctly named managers or "agents" of the unnamed party UPS. Complaint ¶ 1. Moreover, UPS was principally "involved in the acts giving rise to the [agency] claims," and "should have anticipated" that Plaintiff would name her employer in her suit. *See Sosa*, 920 F.2d at 1458–59; *see Chung*, 667 F.2d at 792 (concluding that the three doctors who were not named in plaintiff's original charge but denied the plaintiff the promotions mentioned in the charge should have anticipated plaintiff would name them in his suit).

The second exception is also satisfied; UPS could have easily inferred from the Charge that

1    it was charged with violating the FEHA because Plaintiff made explicit references to the "UPS

2    Transfer Policy" in her Second CRD Charge and identifies six different UPS hub locations to which

3    she was transferred.  *See* Docket No. 1–2 (Complaint Exhibit A) at 38; *see also Myers v. Checksmart*

4    *Fin., LLC*, 701 F. App'x 588, 590 (9th Cir. 2017) (holding that it was "disingenuous for [defendant]

5    to claim that it was unaware of [plaintiff's] charge" when her charge clearly referenced the defendant

6    throughout).  Of course, that inference was further supported by the fact that Plaintiff named UPS

7    managers and agents in the Charge.  Moreover, Plaintiff's First CRD Charge also correctly named

8    UPS as the respondent, and Plaintiff was a named plaintiff in the *Goins* class action suit against UPS

9    alleging much of the same kinds of violations.  *See* Docket No. 1–2 (Complaint Exhibit A) at 30.

10        Construing Plaintiff's Second CRD Charge with the "utmost liberality," the charged party

11   "Uni" is obviously a misspelling or abbreviation of intended respondent "United Parcel Service,

12   Inc."  *See B.K.B.*, 276 F.3d at 1100; *see* Docket No. 1–2 (Complaint Exhibit A) at 36.  UPS no doubt

13   should have known it was the intended respondent to the Second Charge.  Plaintiff is therefore

14   permitted to sue Defendant UPS.

15        Thus, Plaintiff's Second CRD Charge is factually sufficient to exhaust her administrative

16   remedies.[3]

17              c.      Timeliness/Statute of Limitations

18

19   _____

     [3] To be sure, Defendant is correct that the First CRD Charge fails to exhaust her administrative
20   remedies.  Motion at 10.  Plaintiff's First CRD Charge is a list of check box forms of discrimination
     that contains no additional facts.  Docket No. 1–2 (Complaint Exhibit A) at 30–32; *see B.K.B.*, 276
21   F.3d at 1100 ("the crucial element of a charge of discrimination is the factual statement contained
     therein.") (internal quotations and citations omitted); *see Streeper*, 2020 WL 2841883, at *5
22   (concluding that the plaintiff did not exhaust her administrative remedies for her claim of retaliation
     by "checking the box" of retaliation).  Much like the *Goins* aggregate CRD Charge that was
23   dismissed for failure to address the factors prescribed by the Ninth Circuit in *B.K.G.*, here, Plaintiff's
     First CRD Charge has broad allegations regarding a single date, in this case, May 31, 2022.  *See*
24   Docket No. 1–2 (Complaint Exhibit A) at 30–32; *see Goins*, 2023 WL 3047388 at *7; *see* RJN at
     84–87.  Even interpreted with the utmost liberality, Plaintiff's First CRD Charge is not "clear enough
25   to notify [the charged party] of the legal theory being argued and the operative facts at issue."  *See*
     *Fundukian v. United Blood Servs.*, 18 F. App'x 572, 574–75 (9th Cir. 2001) (internal citations
26   omitted).  Nevertheless, the relevance of the First Charge is UPS' notice.  Further, Plaintiff's Second
     CRD Charge sufficiently exhausts administrative remedies, so the failure of the First CRD Charge
27   has no effect on the case.

28

United States District Court
Northern District of California

1    Defendant argues Plaintiff's FEHA claims are time-barred.  Motion at 11–14.  An employee

2    bringing a FEHA claim is required by statute to 1) submit an administrative charge to the CRD

3    within three years of the alleged discriminatory act, 2) obtain a right-to-sue notice from the CRD,

4    and 3) file any civil claim alleging violations of FEHA within one year of receiving the right-to-sue

5    notice.  Cal. Gov. Code §12960 (FEHA) ("A complaint [meaning administrative charge]…shall not

6    be filed pursuant to this article after the expiration of three years from the date that the alleged

7    unlawful practice occurred or refusal to cooperate occurred."); Cal. Gov. Code §12965 (FEHA)

8    (setting out a "one-year statute of limitations, commencing from the date of the right-to-sue notice

9    by the department to the person claiming to be aggrieved"); *Asencio v. Miller Brewing Co.*, 152 F.

10   App'x 576, 577 (9th Cir. 2005), *disapproved of on other grounds in later appeal*, 283 F. App'x 559

11   (9th Cir. 2008) ("A prerequisite to filing a civil complaint under FEHA is obtaining a right-to-sue

12   letter from the [CRD].").

13        Here, Plaintiff filed the instant suit on September 5, 2023, well within the one-year window

14   after filing her Second CRD Charge – it was filed just four days after the Second Charge was filed

15   on September 1, 2023.  *See* Cal. Gov. Code §12965; *see* Docket No. 1–2 (Complaint Exhibit A) at

16   35; *see* Complaint at 28.  And the Second CRD Charge was filed within three years of the conduct

17   charged therein.  At the motion hearing, Plaintiff confirmed she only sought to base her FEHA

18   claims on conduct occurring on the dates stated in her Second CRD Charge, which was December

19   2021 through August 2023.  *See* Docket No. 1–2 (Complaint Exhibit A) at 36–39.  The Second CRD

20   Charge and suit at bar are timely.

21        Accordingly, Defendant UPS's conduct from December 2021 through August 2023 is

22   actionable and the Court denies dismissal of Plaintiff's FEHA claims.

23   C.    Count Seven: Pregnant Workers Fairness Act

24        Plaintiff's seventh cause of action arises under the Pregnant Workers Fairness Act

25   ("PWFA"), which requires employers to grant reasonable accommodations to pregnant employees

26   and prohibits discrimination against employees which require such accommodation.  Complaint ¶¶

27   200–215; 42 U.S.C. § 2000gg–2000gg-6.  The Act provides that "[i]t shall be an unlawful

28   employment practice for a covered entity to… not make reasonable accommodations to the known

United States District Court
Northern District of California

1    limitations related to the pregnancy, childbirth, or related medical conditions of a qualified

2    employee, unless such covered entity can demonstrate that the accommodation would impose an

3    undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 2000gg–1.

4         Plaintiff alleges that UPS failed to accommodate her requests to be taken off

5    "Sort/Packages," where there was a high risk of falling heavy packages; to be removed from a

6    workspace where she was placed on a metal folding chair in a cold upstairs office with no

7    handrails; to be transferred closer to her home (instead transferring her farther than 75 miles and a

8    total of seven times during her pregnancy); and to breast pump for her child.  Complaint ¶¶ 108–

9    116; Docket No. 1–2 (Complaint Exhibit A) at 36–39.

10        1.    Exhaustion of Administrative Remedies

11        Defendant contends that Plaintiff failed to exhaust her administrative remedies because

12   Plaintiff did not file a timely administrative complaint with the EEOC.  Motion at 17–18.

13        The PWFA confers the same powers, remedies and procedures to the EEOC as Title VII.  42

14   U.S.C. § 2000gg-2 (PWFA).  To bring a civil action alleging violations of Title VII, a plaintiff must

15   first exhaust administrative remedies by filing a timely complaint with the appropriate government

16   agency and receiving a right-to-sue letter.  42 U.S.C. § 2000e-5(e), (f)(1) (Title VII).  A plaintiff

17   must file the charge "within three hundred days after the alleged unlawful employment practice

18   occurred, or within thirty days after receiving notice that the State or local agency has terminated

19   the proceedings under the State or local law, whichever is earlier."  42 U.S.C. § 2000e-5 (Title VII).

20        Where federal and state law overlap, there is a work-sharing agreement which "designate[s]

21   the EEOC and the state agency [as] each other's agents for the purpose of receiving charges."

22   *E.E.O.C. v. Dinuba Med. Clinic*, 222 F.3d 580, 585 (9th Cir. 2000); 42 U.S.C. § 2000e-8(b) (Title

23   VII) (permitting cooperation between the EEOC and state agencies).  The Ninth Circuit has

24   recognized "constructive filing": if the state agency has terminated its proceedings, "a charge filed

25   with the state agency before the 300–day filing deadline expires is deemed automatically filed with

26   the EEOC on that same day."  *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175 (9th Cir.

27   1999); *E.E.O.C.*, 222 F.3d at 585 ("[A] charge initially filed with a state agency will be treated as

28   constructively filed with the EEOC upon either the expiration of 60 days or the termination of

United States District Court
Northern District of California

1    agency proceedings, whichever occurs first."). If timely, the plaintiff need not obtain a formal right

2    to sue letter from the EEOC even if so advised by the state agency in terminating its proceedings.

3    *Surrell v. California Water Service Company*, 518 F.3d 1097, 1105 (9th Cir. 2008).

4            Here, Plaintiff constructively filed a complaint with the EEOC when she filed the Second

5    CRD Charge on September 1, 2023 (Docket No. 1–2 at 36–39 (Complaint Exhibit A)) and received

6    a "Notice of Case Closure and Right to Sue" letter from the CRD on the same day. *Id*. at 35

7    (emphasis added). Once a state agency terminates its proceedings, the charge is "deemed

8    automatically filed with the EEOC on that same day." *See Laquaglia*, 186 F.3d at 1175. Thus,

9    Plaintiff constructively filed a timely charge with the EEOC on September 1, 2023 when the CRD

10   terminated its proceedings for her Second CRD Charge. *See* Docket No. 1–2 at 35 (Complaint

11   Exhibit A). Therefore, Plaintiff timely exhausted her administrative remedies with respect to her

12   PWFA claim.

13           However, it is not clear whether Plaintiff's constructive filing was within 300 days of the

14   allegedly unlawful conduct as Title VII requires. *See* 42 U.S.C. § 2000e-5. The Complaint is

15   unclear what alleged unlawful conduct is challenged under the PWFA and when that conduct

16   occurred. Even if Plaintiff overcomes the issue of retroactivity discussed below, she may still be

17   limited to only challenging unlawful conduct which occurred on or after November 5, 2022 (300

18   days before her charge was filed on September 1, 2023). *See* Docket No. 1–2 at 36–39 (Complaint

19   Exhibit A). If she intends to allege unlawful conduct that occurred before that date, Plaintiff may

20   amend the complaint to clarify the timing of the actionable conduct and the legal theory she intends

21   to use to revive otherwise stale claims.

22           2.      Related Medical Condition or Limitation

23           Plaintiff fails to plead facts showing that the PWFA applies to Defendants' failure to

24   accommodate the request for breastfeeding. *See* Complaint ¶ 115. Although at the hearing, Plaintiff

25   made arguments that breastfeeding constituted a "related medical condition" under the PWFA, she

26   does not allege this in the Complaint. *See* 42 U.S.C. § 2000gg–2000gg-6 ("It shall be an unlawful

27   employment practice for a covered entity to… not make reasonable accommodations to the known

28   limitations related to the pregnancy, childbirth, or *related medical conditions* of a qualified

15

employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity") (emphasis added); *see* Hearing, *Beddingfield v. United Parcel Serv., Inc.*, (Feb. 29, 2024) (No. 3:23-cv-05896-EMC).  Nor does Plaintiff allege that breast feeding is a "limitation[] related to pregnancy [or] childbirth."  *See id*.  Plaintiff is allowed to amend the complaint to allege a legal theory and supporting facts showing that the PWFA applies to breast feeding in her case.

### 3.   Effective Date of the PWFA

Defendant also contends that Plaintiff's PWFA claim is inapplicable since her pregnancy is assumed to have started in December 2021, and the PWFA only took effect on June 27, 2023, almost two years after her pregnancy began.  Motion 17–18.  Here, Plaintiff alleges that the period of non-accommodation took place from December 2021 through August 2023.  Complaint ¶ 108.  Though the Complaint is unclear, it appears that the Defendant's failure to accommodate her breastfeeding is the only alleged conduct that may have occurred after the effective date of the PWFA.  *Id.* ¶ 115.

For conduct preceding the effective date of the PWFA, the Complaint and her papers fail to assert whether Plaintiff seeks retroactive application of the PWFA and if so what authorities would support such retroactive application.  Complaint ¶ 202.  Plaintiff's Opposition only adds that "the pregnancy discrimination was ongoing and started after the PWFA took effect," but the factual basis and sequence is unclear.  Opposition at 8.  Plaintiff has failed to allege the timing and sequence of events she claims violated the PWFA.  She also fails to brief why the PWFA has retroactive application.

Accordingly, the Court dismisses Plaintiff's PWFA claim with leave to amend.  Unless she demonstrates the PWFA has retroactive application, she must clearly alleged which conduct occurred after the effective date of the PWFA, and why it is covered.  If she asserts breastfeeding is a related medical condition or limitation, she must put forth legal theory and allege facts so showing.  Finally, she must allege facts demonstrating challenged conduct which is timely relative to the constructive filing of her administrative charge on September 1, 2023.

### D.   Count Four: Intentional Infliction of Emotional Distress

"The elements of the tort of intentional infliction of emotional distress ["IIED"] are: (1)

United States District Court
Northern District of California

1   extreme and outrageous conduct by the defendant with the intention of causing, or reckless

2   disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

3   extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

4   defendant's outrageous conduct…. Conduct to be outrageous must be so extreme as to exceed all

5   bounds of that usually tolerated in a civilized community." *Christensen v. Superior Ct.*, 54 Cal. 3d

6   868, 903 (1991) (internal quotations and citations omitted).  The parties dispute only whether

7   Defendant's conduct was "extreme and outrageous."  Motion at 14.

8       Behavior may be considered outrageous if a defendant (1) abuses a relation or position

9   which gives him power to damage the plaintiff's interest; (2) *knows the plaintiff is susceptible to*

10  *injuries through mental distress*; or (3) acts intentionally or unreasonably with the recognition that

11  the acts are likely to result in illness through mental distress.  Prosser, Law of Torts, supra, at pp.

12  57-58; Rest.2d Torts, s 46 (e), (f).  "[M]ere profanity, obscenity, or abuse, without circumstances

13  of aggravation" does not constitute outrageous conduct.  *Yurick v. Superior Court*, 209 Cal. App.

14  3d 1116, 1128 (1989).   California courts have held, however, that "an employer's use of racial

15  slurs, against an employee who is susceptible to such slurs, may constitute 'outrageous' conduct."

16  *Robinson v. Hewlett-Packard Corp.*, 183 Cal. App. 3d 1108, 1129–30 (Ct. App. 1986).

17      Here, Plaintiff, an African American woman, has demonstrated UPS's conduct was

18  "extreme and outrageous" given her employer's use of racial slurs against her.  Complaint ¶ 1.

19  Plaintiff alleges that she was called the N-word and given degrading nicknames such as "Scooby-

20  Doo" and "Scrappy Doo."  Complaint ¶¶ 1, 114.  Additionally, Plaintiff alleges that her manager

21  asked if her baby was Black for "identification purposes" and "making sure it was her child."  *Id*.

22  ¶ 116.  California courts have held that the use of the N-word, coupled with racially motivated

23  insults, may be sufficiently outrageous conduct to support an IIED claim.  *See Alcorn v. Anbro*

24  *Eng'g, Inc.*, 2 Cal. 3d 493, 499 (1970) (holding that "although it may be that mere insulting

25  language, without more, ordinarily would not constitute extreme outrage, the aggravated

26  circumstances alleged by plaintiff seem sufficient to uphold his complaint as against defendants'

27  general demurrer" where a Black plaintiff was called the N-word by his supervisors); *see also*

28  *Agarwal v. Johnson*, 25 Cal. 3d 932, 947, 603 P.2d 58, 67 (1979), *disapproved of on other*

United States District Court
Northern District of California

17

*grounds by White v. Ultramar, Inc.*, 21 Cal. 4th 563, 981 P.2d 944 (1999) (holding that an employer's use of the N-word against an Indian employee constituted "outrageous" conduct).

Defendant also argues Plaintiff's IIED claim is barred by the worker's compensation exclusivity doctrine.  Motion at 15.  The exclusivity provision of California's workers' compensation statute provides that worker's compensation shall be the sole and exclusive remedy of the employee against the employer.  Cal. Lab. Code, § 3602; *see Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987) (holding that physical and emotional injuries sustained in the normal course of employment are preempted by the workers' compensation scheme and generally will not support an independent cause of action).  However, the worker's compensation exclusivity doctrine is limited to employer misconduct which is a "normal part of the employment relationship."  *Cole*, 43 Cal. 3d at 160.

In *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 510 (9th Cir. 1989), the Ninth Circuit held that racial discrimination is not part of the normal course of the employer-employee relationship.  There, two Black female employees alleged they were discharged in retaliation for filing EEOC complaints against their employer.  *Id.* at 502.  The district court dismissed their negligent and intentional infliction of emotional distress claim, reasoning they were precluded by the California Worker's Compensation Act.  *Id.* at 510.  The Ninth Circuit reversed the dismissal, explaining:

> Miller and Lewis contend that they suffered emotional distress as a result of being laid off following settlement negotiations concerning their complaints of racial discrimination.  In our view, this is not a "normal" pattern of events in the workplace, and no California court has characterized it as such.  On the contrary, the court in *Hart* indicated that the California courts do not broadly construe the term a "normal part of the employment relationship." *See Hart,* 235 Cal. Rptr. at 74 ("there can be little doubt that sexual harassment by a manager toward a lower level employee is not "a normal part of employment.").

*Id.*

Here, the allegations of racial discrimination that underlie Plaintiff's IIED claim are similar to those in *Miller*.  Being called the N-word and racially derogatory names such as "Scooby Doo" was not a risk Beddingfield contemplated when beginning work for UPS.  Like the allegations of

1    sexual harassment in *Hart,* racial and pregnancy discrimination are not a normal part of

2    employment and therefore are not barred by the worker's compensation act.  *See Murray v.*

3    *Oceanside Unified Sch. Dist.*, 79 Cal. App. 4th 1338, 1363 (2000) ("[W]here a plaintiff can allege

4    that she suffered emotional distress because of a pattern of continuing violations that were

5    discriminatory, her cause of action for infliction of emotional distress will not be barred by the

6    exclusivity provisions of workers' compensation laws.").

7        Therefore, the Court denies dismissal of the IIED claim because Plaintiff has adequately

8    alleged "extreme and outrageous" conduct, and that claim is not barred by the worker's

9    compensation act.

10   E.    Count Six: Equal Pay Act

11       Congress enacted the Equal Pay Act ("EPA") in 1963 to remedy a serious and endemic

12   problem of employment discrimination in private industry by mandating equal pay for equal work

13   regardless of an employee's sex.  29 U.S.C. § 206; *Coring Glass Works v. Brennan,* 417 US. 188,

14   195 (1974).  The Act provides that "No employer ... shall discriminate, within any establishment

15   in which such employees are employed, between employees on the basis of sex by paying wages

16   to employees in such establishment at a rate less than the rate which he pays wages to employees

17   of the opposite sex in such establishment for equal work."  29 U.S.C. § 206(d)(1).

18       The plaintiff has the burden of establishing a prima facie case of "whether the plaintiff is

19   receiving lower wages than the average of wages paid to all employees of the opposite sex

20   *performing substantially equal work and similarly situated* with respect to any other factors, such

21   as seniority, that affect the wage scale."  *Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 916 (9th

22   Cir. 1983) (emphasis added).  As is relevant in the case at bar, vacation and holiday pay must be

23   considered as wages in applying the EPA.  29 U.S.C. at § 1620.10, et. seq.  Plaintiff must also

24   demonstrate that comparator employees work within the same "establishment," which is defined

25   as "a distinct physical place of business rather than . . . an entire business or 'enterprise' which

26   may include several separate places of business. . . each physically separate place of business is

27   ordinarily considered a separate establishment."  *Id.* § 1620.9(a).

28       Defendant is correct that Plaintiff does not allege any facts about the work she performed

United States District Court
Northern District of California

1   for which she was allegedly underpaid, how her work was substantially similar to work performed

2   by similarly situated men, or that those men worked in the same establishment.  Motion at 15–17.

3   Plaintiff does not specify which facts support violations of the Equal Pay Act in the Complaint,

4   but re-alleges and incorporates the entirety of her factual pleadings as part of her claim.

5   Complaint ¶ 191.  The Court has identified the following portions of Plaintiff's factual allegations

6   as potentially demonstrative of sex-based pay disparity, but finds a claim is not adequately alleged

7   and thus dismisses this claim with leave to amend.

8        First, Plaintiff claims her manager Jeff Davies "displayed favoritism and discriminatory

9   behavior, particularly after he learned about her pregnancy… [and] denied her time off, including

10  vacation days and D-Days (extra days off) that she was entitled to."  Complaint ¶ 39.  It is unclear

11  at what "establishment" these acts took place.  It is also unclear whether her male counterparts,

12  with the same or similar responsibilities as an "On-Road Supervisor," (*id*. ¶ 37) were granted

13  vacation days and D-Days.  This allegation is not sufficient to support Plaintiff's EPA claim.

14       Next, Plaintiff states that:

15            she **faced difficulties regarding promotions** based on her race and
              the MIP (Management Incentive Plan). She claims that she was
16            initially denied a promotion and was misinformed about the mileage
              requirement for eligibility. She further alleges that she was **not
17            given the MIP benefits she should have received, causing her to
              miss out on significant financial gains.**
18

*Id*. ¶ 42 (emphasis added).  Again, it is unclear at what "establishment" this discrimination took

19  place, or if it took place at all establishments.  It is also unclear if Plaintiff's promotion issues were

20  tied to her gender or sex.  Additionally, Plaintiff fails to identify if there were "similarly situated"

21  male counterparts on the wage scale who unlike her benefited from the MIP program.  *See Hein*,

22  718 F.2d at 916.

23       Plaintiff also alleges that she experienced issues with incorrect paychecks and

24  discrepancies in her working hours while working in the Oakland UPS location.  Complaint ¶ 43.

25  Plaintiff here identifies an establishment, but not whether male coworkers in Oakland who held

26  the same position did not experience these issues with working hours.

27       To be sure, Plaintiff generally alleges that she was receiving unequal pay and vacation

28

United States District Court
Northern District of California

20

days due to her pregnancy and sex.  She alleges that others in her workplace were allowed to take

vacation days, while she was not granted the same privilege.  *Id*. ¶ 77.  Plaintiff's manager even

confirmed that the company had erroneously applied its vacation policy to her.  *Id*. at ¶¶ 78–83.

When Plaintiff brought issues with her pay with her managers, she discovered that her managers

were questioning her pay and considering transferring her after the birth of her child.  *Id*. at ¶ 85.

However, she does not allege that male counterparts (who were similarly situated with respect to

factors that affect the wage scale) were given pay and vacation days.  *See Hein*, 718 F.2d at 916;

*cf. Marziano v. Cnty. of Marin*, No. C-10-2740 EMC, 2010 WL 3895528, at *8 (N.D. Cal. Oct. 4,

2010) (ultimately dismissing Plaintiff's discrimination claims for failure to cite a basis of

discrimination – gender, race, etc. – but accepting Plaintiff's relatively scant factual allegations

that "[the] COUNTY has allowed similarly situated non-Caucasian-female employees to

telecommute" as well as "similarly situated employees who suffered from conditions other than

RSD.").

    Finally, Plaintiff alleges that managers in the UPS location in Ceres pushed for Plaintiff to

go on disability leave due to restrictions imposed by her pregnancy, despite her protests.  *Id*. ¶¶ 89,

97–100.  Plaintiff identifies an establishment but fails to allege that her male counterparts on the

wage scale were not taken out of work and therefore received more pay.

    Defendant also attempts to eliminate Plaintiff's EPA claim on the same grounds as the

dismissal of the class-wide EPA claim in *Goins*:

> Plaintiffs do not allege facts showing that the thousands of UPS
> facilities nationwide, where employees are governed by several
> collective bargaining agreements and supervised by hundreds of
> thousands of managers, embody the "unusual circumstance" that is
> the exception to the rule of EPA claims being limited to a single
> establishment.

*Goins*, 2023 WL 3047388, at *13.  In contrast to the thousands of UPS facilities discussed in

*Goins*, here, Plaintiff's individual claims are limited to "six different hubs" within northern

California (Lathrop, San Ramon, Oakland, Merced, Walnut Creek and Ceres).  Complaint ¶ 35.

Moreover, Plaintiff does not attempt to establish that these "different hubs" constitute one "same

establishment" for the purposes of her EPA claim.  *Id*.  Plaintiff's factual allegations appear to be

traceable to "distinct physical place[s] of business," which would allow her to establish pay differentials on the basis of sex at each of the UPS locations she worked for.  The only factual allegation which does not appear to be tied to a physical location or specific manager is her issues with promotion through MIP, which appears to be a global UPS program and therefore could span multiple locations.  Complaint ¶ 42.  If Plaintiff chooses to tie this allegation to her EPA claim upon amendment, then the issue of whether the six different hubs constitute the "same establishment" will be considered then.  Thus, Defendant's reliance on *Goins* to dismiss Plaintiff's EPA cause of action at this juncture is inapposite.

Accordingly, Plaintiff's sixth cause of action is dismissed with leave to amend. While her allegations of sex-based pay discrimination are insufficient to support a claim under the EPA, the Court grants leave to amend so that Plaintiff can plead more specific facts.

F.      Count Five: Unfair Business Practices

Under the California Unfair Competition Law (UCL), unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  *See* Cal. Bus. & Prof. Code § 17200.  A business practice is "unlawful" under section 17200 if it violates an underlying state or federal statute or common law.  *See Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).

Because at least one of Plaintiff's claims that would underlie an unlawful business act or practice survives, the Court denies dismissal of this claim.

## V.      CONCLUSION

The Court GRANTS dismissal with leave to amend Counts Seven (PWFA), and Six (EPA).

The Court DENIES dismissal of Counts One (Retaliatory Disparate Treatment in Violation of Public Policy), Two and Three (FEHA), Four (IIED), and Five (UCL).

**IT IS SO ORDERED**.

Dated: April 8, 2024

EDWARD M. CHEN
United States District Judge