UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITY BEDDINGFIELD,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., et al.,<br><br>Defendants. | Case No. 23-cv-05896-EMC   (EMC)<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Docket Nos. 57, 58. |

Plaintiff Unity Beddingfield sued her employer Defendant United Parcel Service, Inc. ("UPS"), along with several UPS managers, for employment discrimination based on her race, gender and pregnancy. The Court previously allowed her claims to proceed against UPS. Dkt. No. 29. Now two of the UPS managers that she sued in an individual capacity – Renee Rea and Omar Parra – move to dismiss the claims against them under Rules 8 and 12(b)(6). Dkt. Nos. 57, 58. The Court finds this matter suitable to disposition on the papers. For the reasons stated below, the Motions to Dismiss are **GRANTED**.

I.   **FACTS AND BACKGROUND**

Procedural Background

Plaintiff filed her initial complaint on September 5, 2023 in California state court. Dkt. No. 1. Defendant UPS removed the action on November 15, 2025 and moved to dismiss on all counts on November 22, 2023. *Id*.; Dkt. No. 9. The Court granted Defendant UPS's motion with leave to amend as to Count Six (PWFA) and Count Seven (EPA), and denied the motion with respect to the remaining counts: Count One (Retaliatory Disparate Treatment in Violation of

Public Policy), Two and Three (FEHA), Four (IIED), and Five (UCL). Dkt. No. 29.  On May 5, 2024, Plaintiff filed a First Amended Complaint, which Defendant UPS answered.  Dkt. No. 32, 33.  The FAC alleged the same seven causes of action as the initial complaint.  Dkt. No. 32.

On August 21, 2025 two individual defendants, named in the FAC as "Omar" and "Rene Reyes," – who had not previously been successfully served – returned waivers of service.  Dkt. No. 55, 56.  On October 20, 2025, these defendants moved to dismiss.  Dkt. No. 57, 58.

Facts Relating to Defendant Renee Rea

Renee Rea, erroneously sued as "Rene Reyes," is named in the complaint as a UPS manager.  Dkt. No. 32 ¶ 1.  Her employment relationship with Plaintiff specifically is not provided.  According to the Complaint:

> During a meeting with Ryan Parole and Renee Reyes, Plaintiff discussed issues with her pay, transfer, and safety concerns related to COVID-19 protocols.  Plaintiff discovered that her pay was being questioned, and a transfer to a different location was suggested after the birth of her child.

*Id.* ¶¶ 84-85.

Other than this, Defendant Rea is not mentioned in the fact section of the complaint.  Defendant Rea is also not named as a defendant in any of Plaintiff's Counts.  In Count Four, Intentional Infliction of Emotional Distress, which is stated against Defendant UPS, Defendant Rea is listed as an agent of UPS.  *Id.* ¶ 169.

Facts Relating to Defendant Omar Parra

"Omar" (Omar Parra) is named in the complaint as a UPS manager at the Ceres location Plaintiff worked at.  Dkt. No. 32 ¶ 1, 89.  The Complaint alleges the following relating to Defendant Parra:

> During Plaintiff's transfer to Ceres, Plaintiff arrived on her first day at the new location and discovered that the manager, Omar, had no prior knowledge of her arrival because he was on vacation, and no one informed him.
>
> Omar expressed uncertainty about where to place Plaintiff since the

2

tasks performed by Evelyn and Alex, who were supervisors, were not suitable for her. He mentioned that she couldn't work in a truck.

Omar instructed Plaintiff to report to a part-time employee and perform preload duties, which she did not want to do because she didn't want to be demoted from her on-road supervisor position.

Instead of providing a proper workspace, Plaintiff was given a metal fold-out chair on the second floor with no desk or designated area to store her belongings. Plaintiff's responsibility was to observe two people putting packages into a bin.

The working conditions were uncomfortable, with open doors causing cold temperatures, and the lack of handrails and beams in the building made it unsafe to walk around due to falling packages.

When Plaintiff asked Omar about her responsibilities, he instructed Plaintiff to do whatever tasks were assigned to her. However, she couldn't be on the floor due to the risk of packages falling or encountering stairs.

As a result of the uncomfortable chair and the limited tasks she could perform, Plaintiff experienced physical discomfort such as swollen feet and back pain.

[..]

Omar called Plaintiff into the office, where Jose, an on-road supervisor, was present. Omar suggested that Plaintiff go on short-term disability due to the restrictions imposed by her pregnancy and the potential possibility of her being injured at work.

Omar discussed pay in front of Jose, even though it should have been a conversation held with higher-level individuals like Ryan Pearl or Jeff Kindle.

Plaintiff raised concerns about her restrictions and forms that weren't filled out properly, expressing that Plaintiff had the ability to handle more than the initially stated 10-pound restriction and had experience managing audits.

Despite Plaintiff's concerns, Omar continued to push for her to go on disability and even suggested that she train a new employee named Jose to become certified, implying that it would help her retain her supervisor position.

Plaintiff was given an unrealistic timeframe for training Jose, as well as being asked to follow a car washer, which involved physical activities that were not suitable for Plaintiff's pregnancy restrictions.

*Id.* at ¶¶ 89-101.

Defendant Parra is not named as a defendant in any of Plaintiff's Counts. In Count Four, Intentional Infliction of Emotional Distress, which is stated against Defendant UPS, Defendant

3

1  Parra is listed as an agent of UPS. *Id.* ¶ 169.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action for failure to state a claim for relief.  To overcome a Rule 12(b)(6) motion after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

## III.   DISCUSSION

A. Failure to Comply with Rule 8

To comply with Fed. R. Civ. P. Rule 8, a plaintiff must set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).  Plaintiff's complaint does not name Defendants Rea and Parra as defendants for any specific count in her complaint, leaving it unclear which theories are being asserted against which defendant.  In briefing, Plaintiff now asserts that Plaintiff sues these defendants for violations of the Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940 ("UCL"), and the Pregnant Workers Fairness Act ("PWFA").  Dkt. No. 60 at 2.  Plaintiff's failure

4

1  to make clear which theory applies to which defendant in the FAC is grounds to dismiss under

2  Rule 8.  As discussed below, the claims against Defendants Rea and Parra also fail to state a claim

3  under Rule 12(b)(6).

B. <u>Plaintiff Has Not Stated a FEHA Claim Against Defendants Rea and Parra</u>

Employees are not personally liable for *discrimination* claims under FEHA.  *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1160 (Cal. 2008) (citing *Reno v. Baird* 18 Cal.4th 640 (Cal. 1998)).  However, supervisors may be held personally liable for *harassment* claims. *Page v. Superior Court*, 31 Cal. App. 4th 1206, 1212 (Cal. App. 1995).  A supervisor is only liable for harassing conduct that they have personally participated in.  *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1327 (Cal. App. 1996).  "[M]ere inaction by a non-harassing supervisor" does not create personal liability.  *Id*.  This reflects the general principal that an agent is not liable for the wrongs of other agents or their employer.  *Id.* at 1329.

To state a claim for harassment under FEHA, Plaintiff must establish that: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014) (citing *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121, 130 (Cal. 1999)).  Generally, "[D]iscrimination refers to bias in the exercise of official actions on behalf of the employer" whereas "harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Bailey v. S.F. Dist. Attorney's Office*, 16 Cal. 5th 611, 627 (Cal. 2024).  "[C]ommonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." *Reno v. Baird*, 18 Cal. 4th 640, 647 (Cal. 1998) (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64-65 (Cal. App. 1996).  However, "Sometimes 'the hostile message

5

1   that constitutes the harassment is conveyed through official employment actions, and therefore
2   evidence that would otherwise be associated with a discrimination claim can form the basis of a
3   harassment claim.'" *Pollock v. Tri-Modal Distribution Servs., Inc.*, 11 Cal. 5th 918, 932 (Cal.
4   2021) (quoting *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (Cal. 2009); *see also Miller v. Dep't
5   of Corr.*, 36 Cal. 4th 446, 466-67 (Cal. 2005) (widespread sexual favoritism that took the form of
6   official employment actions conveyed "demeaning message" that could give rise to harassment
7   claim).

8   Since Plaintiff is attempting to sue Defendants Rea and Parra in their personal capacity,
9   Plaintiff must show that those employees personally engaged in harassment (as opposed to
10  discrimination) under FEHA.

12  1. <u>Defendant Renee Rea</u>

13  Plaintiff has only alleged a single incident involving Defendant Rea personally.  This
14  incident was a meeting between Plaintiff, Defendant Rea, and another employee, Ryan Parole.
15  According to Plaintiff, during this meeting, "Plaintiff discussed issues with her pay, transfer, and
16  safety concerns related to COVID-19 protocols" and "discovered that her pay was being
17  questioned, and a transfer to a different location was suggested after the birth of her child." FAC ¶
18  ¶ 84-85.  It is unclear from this pleading what role Defendant Rea played in this meeting, and
19  whether the questioning of Plaintiff's pay and the suggestion for transfer came from Defendant
20  Rea, Parole, both, or neither (i.e., was conveyed to Plaintiff at that meeting, but originated from
21  elsewhere in management).  The rest of the FAC provides no further context to Defendant Rea's
22  interactions with Plaintiff, since she is not mentioned again.

23  This allegation is not sufficient to show that Defendant Rea personally participated in
24  harassment of Plaintiff.  Even if the allegations were clear that Defendant Rea was responsible for
25  the transfer suggestion and questioning of pay, this involves personnel management decisions
26  from which no message particularly demeaning as to a protected status was conveyed.  Moreover,
27  this single incident is not sufficiently severe or pervasive to constitute harassment. *Compare
28  Bailey v. S.F. Dist. Attorney's Office*, 16 Cal. 5th 611, 634 (Cal. 2024) (finding a triable issue of

fact over whether the "one-time use of the N-word" created a hostile work environment). While Plaintiff argues that she has alleged "multiple, linked acts of intimidation, humiliation, and denial of accommodation by supervisors—including Rea—culminating in economic and emotional harm," Dkt. No. 60 at 6, this argument impermissibly conflates Defendant Rea's actions with the actions taken by others at UPS. Such actions may be imputed to UPS, and indeed, Plaintiff's FEHA claim against UPS proceeds based on those actions. But Plaintiff may not rely on the acts of other UPS employees as a basis to assert a claim against Defendant Rea in her individual capacity.

Accordingly, the FEHA claim against Defendant Rea is **DISMISSED**.

### 2. Defendant Omar Parra

According to the FAC, Defendant Parra was Plaintiff's manager at the Ceres location. Dkt. No. 32, FAC ¶ 89. Plaintiff alleges that at this location she was "given a metal fold-out chair on the second floor with no desk or designated area to store her belongings." *Id.* ¶¶ 92, 93. Plaintiff alleges that Defendant Parra urged her on multiple occasions to go on short-term disability due to her pregnancy, *id.* ¶¶ 97, 100, discussed her pay in front of a new employee, *id.* ¶ 100, urged Plaintiff to train that new employee in an unrealistic timeframe, *id.* ¶¶ 100-101, assigned Plaintiff physical tasks that Plaintiff was not suited to completing while pregnant, *id.* ¶ 101, and did not assign Plaintiff other tasks she could complete, *id.* ¶¶ 91, 99.

All of Defendant Parra's actions fall into the category of personnel management decisions that, even if shown to be rooted in animus, typically provide only the basis for a discrimination claim, not a harassment one. *See Roby*, 47 Cal. 4th 686 at 707. The California Supreme Court has recognized, however, that sometimes harassment and discrimination are "closely interrelated" and that "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Id.* at 707, 709. For example, in *Miller*, a supervisor's pattern of promoting women who slept with him while denying advancement to those who did not could have conveyed a "demeaning message" that was sufficiently widespread to constitute a hostile work environment. *Miller*, 36 Cal. 4th at 468. But

7

Plaintiff here alleges no such widespread pattern or any particularly demeaning message directed at her protected status on the part of Defendant Parra. Indeed, Plaintiff does not even argue in her opposition that Defendant Parra's conduct constituted harassment. *See* Dkt. No. 60 at 8 (arguing that a claim for harassment is stated only as to Defendant Rea).

Accordingly, the FEHA claim against Defendant Parra is **DISMISSED**.

C. <u>Whether Defendants Rea and Parra Are Liable Under the Pregnant Workers Fairness Act</u>

Plaintiff states in her opposition that she asserts a claim for violation of the Pregnant Workers Fairness Act against Defendants Rea and Omar, despite her complaint only alleging this count against Defendant UPS. Dkt. No. 60 at 2. However, the Pregnant Workers Fairness Act applies only to "covered entities," the definition of which does not include employees. *See* 42 U.S.C.S. § 2000gg-1.[1] The act therefore does not provide for a cause of action against individual employee defendants in their personal capacity.

To the extent Plaintiff purports to assert her PWFA claim against any individual employee defendants, this claim is **DISMISSED without leave to amend**. *See e.g.*, *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (recognizing that dismissal with prejudice is proper when amendment would be futile).

---

[1] "As used in this division—
(2) the term "covered entity"—
  (A) has the meaning given the term "respondent" in section 701(n) of the Civil Rights Act of 1964 (42 U.S.C. 2000e(n)); and
  (B) includes—
    (i) an employer, which means a person engaged in industry affecting commerce who has 15 or more employees as defined in section 701(b) of title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e(b));
    (ii) an employing office, as defined in section 101 of the Congressional Accountability Act of 1995 (2 U.S.C. 1301) and section 411(c) of title 3, United States Code;
    (iii) an entity employing a State employee described in section 304(a) of the Government Employee Rights Act of 1991 (42 U.S.C. 2000e-16c(a)); and
    (iv) an entity to which section 717(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(a)) applies." 42 USC § 2000gg (Definitions).

"It shall be an unlawful employment practice for a covered entity to—[…]." 42 USC § 2000gg-1 (Nondiscrimination with regard to reasonable accommodations related to pregnancy).

8

D.  Whether Plaintiff Stated a Claim Against Defendants Rea and Parra under the UCL

Plaintiff asserts that her UCL claim is derivative of Defendants' alleged violations of FEHA and the PWFA.  Dkt. No. 60 at 9.  But Plaintiff has failed to state a claim against Defendants Rea or Parra on either count.  The UCL claim is thus **DISMISSED** against Defendants Rea and Parra.

IV.  **CONCLUSION**

Defendant Rea and Defendant Parra's motions to dismiss are **GRANTED** on all counts. Dismissal is with leave to amend as to the FEHA and UCL claims, but without leave as to the PWFA claim.

**IT IS SO ORDERED**.

Dated: 1/14/2026

_____
EDWARD M. CHEN
United States District Judge

9